**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUSTIN MOHN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  22-773** |
| | : | |
| **MIGUEL CARDONA**, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                **March 9, 2022**

Pennsylvania State University graduate Justin Mohn is disappointed his 2014 college degree in agribusiness management renders him overqualified for job opportunities in the 2022 job market. He borrowed taxpayer dollars beginning in 2010 to finance his degree. He blames affirmative action laws as now costing him job opportunities as an overeducated white man. But he signed student loan documents beginning twelve years ago. He claims repaying those loans at approximately $160 a month are causing him emotional distress, mental anguish, and loss of quality of life. He now pro se sues the Secretary of the Department of Education without paying the filing fees and seeks $10 million in damages. Congress requires we screen a complaint we allow to proceed without paying the filing fees before incurring the costs of service. Our screening confirms he does not state a claim. He alleges no facts which could support a claim for nondisclosure. He does not plead how the Department misapplied the Higher Education Act. He does not plead a fact allowing us to toll the two-year statute of limitations bar plainly evident from judicial admissions he secured the loan in 2010 and began paying it in late 2014. We dismiss his complaint following screening with leave to amend to allege claims other than under the Higher Education Act.

I.        **Alleged pro se facts.**

Justin Mohn borrowed federal taxpayer dollars to finance his college education from 2010 to 2014 at Pennsylvania State University. His parents "arranged" the loan on his behalf.[1] His "parents and the Department of Education and or loan servicer agreed upon" the terms of the loan payments.[2]

He signed a federal student loan with the Department of Education in 2010 to finance his education at Penn State University.[3] He graduated four years later with a Bachelor of Science in agribusiness management.[4] Mr. Mohn has since worked unrelated jobs "amongst a majority of coworkers and bosses with less formal education than [him]."[5] He partially attributes his inability to secure his desired job on affirmative action laws allowing and encouraging "the harassment, discrimination, and wrongful termination" of the "overeducated white male."[6] Mr. Mohn alleges the Department of Education "should have been aware of affirmative action under EEOC laws as well as America's growing trend of a poor job market for recent college graduates."[7] Its failure to warn him of these dangers, coupled with his demanding student loan payments of $200 a month— later reduced to $160 a month—"sent [him] into ever surmounting debt with other creditors."[8] Mr. Mohn alleges the Department of Education and its Secretary, Miguel Cardona, "hid and or misrepresented the risks and or appropriateness" of his federal student loans, effectively misapplying the Higher Education Act to make his "life worse off [than] had [he] not went to college paid for by the loan in question."[9]

Mr. Mohn claims he suffered emotional distress, mental anguish, and a loss of quality of life by his inability to obtain a job suitable to his qualifications.[10] He seeks $10 million in monetary damages.[11] Mr. Mohn also requests we order the Department of Education reimburse him for the principal he already paid on the loan and discharge his remaining balance.[12]

## II.     Analysis

Because we granted Mr. Mohn's application to proceed *in forma pauperis*, Congress directs we dismiss a claim filed without paying fees which we find frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[13] When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B)(ii), we apply the same standard used under Federal Rule of Civil Procedure 12(b)(6).[14] We accept all fact allegations as true and construe those facts in the light most favorable to the plaintiff to determine whether she states a claim for relief plausible on its face.[15] We must be "mindful of our 'obligation to liberally construe a pro se litigant's pleadings …'"[16] We "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[17] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules – they must abide by the same rules that apply to all other litigants."[18]

### A.     We must dismiss Mr. Mohn's complaint for failing to state a claim.

Mr. Mohn claims the U.S. Department of Education and Secretary Cardona failed to warn him of the alleged risks and appropriateness of taking a federal student loan in 2010.[19] He does not allege the Department made affirmative misrepresentations. He instead claims it deliberately omitted or concealed the risks of taking the student loan. Mr. Mohn alleges the Department failed to consider or disclose to potential student borrowers the high living costs, poor job market years later, and dangers of "harassment, discrimination, and wrongful termination [to] white men" because of the EEOC's interpretation of affirmative action laws.[20]

3

We liberally construe his Complaint to raise four claims: (1) negligent misrepresentation; (2) fraudulent concealment; (3) fraudulent nondisclosure; and (4) misapplying the Higher Education Act. Mr. Mohn's barebone allegations do not state a claim.

**1. Mr. Mohn does not allege an affirmative material misrepresentation required to plead negligent misrepresentation.**

Pennsylvania law recognizes a negligent misrepresentation claim when a party misrepresents a material fact to induce another to act.[21] To sufficiently plead a negligent misrepresentation claim, Mr. Mohn must allege "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."[22] The claim must also be "based on some duty owed by one party to another."[23]

Mr. Mohn alleges "[t]he Department of Education hid or misrepresented the risks and or appropriateness of [his] federal student loan."[24] But he does not claim the Department or Secretary Cardona made an *affirmative* material misrepresentation about the high cost of living, poor job market, or alleged threat of affirmative action twelve years later. Nor can we imagine how the Department could make such a representation. A negligent misrepresentation claim requires "an actual misrepresentation on the part of the defendant."[25]

The Department could not have made such misrepresentations as he had no communications with any of its agents. Mr. Mohn explains his parents "arranged" the loan on his behalf.[26] His "parents and the Department of Education and or loan servicer agreed upon" the terms of the loan payments.[27] Mr. Mohn cannot claim the Department or one of its agents misrepresented the risks of the loan while also claiming he never spoke to anyone from the Department about the terms and conditions of the loan.[28] Mr. Mohn at most alleges the Department

of Education should have disclosed the risks to him because of the nature of the transaction and his status as an unsophisticated, vulnerable student borrower. As "a negligent misrepresentation claim may not be made out on the basis of a failure to disclose," we must dismiss this claim.[29]

### 2. Mr. Mohn does not allege the Department had the necessary intent or a special relationship which would give rise to a duty to speak to plead fraudulent concealment.

An actionable fraud claim does always not require a false representation made through a positive assertion; rather it can be "any artifice by which a person is deceived to his disadvantage [including] . . . concealment of that which should have been disclosed, which deceives or is intended to deceive another to act upon it to his detriment."[30] To state a claim for fraudulent concealment, Mr. Mohn must plead: (1) The Department of Education and Secretary Cardona caused an omission; (2) material to the transaction; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading him into relying on it; (5) and which he justifiably relied; and, (6) proximately caused the damage.[31]

Mr. Mohn must also plead the existence of a special relationship which would give the Department of Education a duty to speak.[32] "[M]ere silence is not sufficient [to establish fraudulent concealment] in the absence of a duty to speak" even if all other elements are established.[33] The duty to speak in Pennsylvania "exists only in limited circumstances," such as "(1) when there is a fiduciary, or confidential, relationship between the parties; (2) where one party is the only source of information to the other party or the problems are not discoverable by other reasonable means; (3) when disclosure is necessary to prevent an ambiguous or partial statement from being misleading; (4) where subsequently acquired knowledge makes a previous representation false; or (5) where the undisclosed fact is basic to the transaction."[34]

The duty to speak arises most often by showing a fiduciary relationship between the parties.[35] A fiduciary relationship requires "trust and confidence" between the parties.[36] Fiduciary

relationships may arise through the operation of law; for example, between principal and agent, attorney and client, and partnership relationships.[37]

Because Mr. Mohn is alleging fraud, he must also "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[38] Mr. Mohn's allegations must be plead with "sufficient particularity to place the [Department of Education] on notice of the precise misconduct with which it is charged."[39]

Mr. Mohn does not claim the Department's alleged omission "was made falsely" or "with the intent of misleading." Mr. Mohn describes his loan as "predatory in nature, possibly even constituting a tort" in light of "employers' perspectives of [him] as an overeducated white male," and the poor job market available to graduates like him.[40] But he admits "the U.S. Department of Education may not have been aware that [he] would outperform and be more educated than his coworkers in the future."[41] Despite the Department's inability to predict Mr. Mohn's pleaded capacity to "outperform and be more educated than his coworkers" and his resulting struggle to get a job years after issuing the loan, Mr. Mohn alleges the Department should have warned him of these risks "unbeknownst to [him] at the time of taking out the student loan."[42] Mr. Mohn does not claim the Department deliberately concealed these risks to induce him to borrow funds under a loan document. Nor does he claim he justifiably relied on the Department's omission in deciding to borrow funds. Mr. Mohn does not allege facts to show the Department made the alleged omissions falsely or with the intent to mislead Mr. Mohn.

Mr. Mohn also does not allege the Department of Education or Secretary Cardona owe him a fiduciary duty or sit in a special relationship which would require them to disclose the allegedly concealed information. Mr. Mohn does not even claim he interacted directly with the Department

6

of Education, instead explaining his parents "arranged" the loan on his behalf.[43] Mr. Mohn does not adequately plead the Department's intent nor the existence of any type of special relationship. Mr. Mohn does not state a claim for fraudulent concealment.

### 3. Mr. Mohn does not allege a relationship between the parties or circumstances which would trigger the Department's duty to speak as required to plead fraudulent nondisclosure.

Mr. Mohn "must allege that the defendant[s] [were] under a duty to disclose the information" to proceed on a fraudulent nondisclosure claim.[44] This duty may arise in certain limited circumstances, including "(1) when there is a fiduciary, or confidential, relationship between the parties; (2) when disclosure is necessary to prevent an ambiguous or partial statement from being misleading; (3) where subsequently acquired knowledge makes a previous representation false; [and] (4) where the undisclosed fact is basic to the transaction."[45] As with his fraudulent concealment claim, Mr. Mohn fails to allege a relationship between the parties or circumstances which would trigger the Department of Education's or Secretary Cardona's duty to speak. Mr. Mohn does not identify a relationship with the Department which would form the basis of a duty for it to disclose the allegedly omitted information. Mr. Mohn also does not allege circumstances requiring the desired disclosures. Mr. Mohn does not state a claim for fraudulent nondisclosure.

### 4. Mr. Mohn cannot allege the Department violated the Higher Education Act.

Mr. Mohn alleges in one sentence the "Department of Education . . . misapplied the Higher Education Act to make [his] life worse off had [he] not went to college paid for by the loan in question."[46] But he cannot bring a claim under the Higher Education Act as Congress did not provide a private right of action under the Act.[47] "The express language of the [Act], and the regulations promulgated thereunder, do not 'create a private cause of action, and there is nothing

in the Act's language, structure or legislative history from which a congressional intent to provide such a remedy can be implied.'"[48] Judge Bartle found nearly three decades ago the Higher Education Act does not confer a private right of action to students who wished to prevent enforcement of federally guaranteed student loans.[49] We follow well-established precedent in finding Mr. Mohn cannot state a claim under the Higher Education Act.

**B.      We must dismiss Mr. Mohn's claims as barred by the statute of limitations.**

We may dismiss a claim if the face of the Complaint plainly confirms the claims are barred by the governing statute of limitations.[50] As our Court of Appeals has explained, "[a]lthough the statute of limitations is an affirmative defense, a district court may sua sponte dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required."[51] For example, in *Peele v. McLaughlin,*[52] the Court of Appeals upheld the district court's dismissal of plaintiff's § 1983 claims for exceeding the two-year statute of limitations because although the plaintiff claimed he knew of the alleged wrongdoing at the time it occurred in October 2011, he did not begin his civil action until July 2015.[53] When the complaint makes clear when the cause of action accrued, and such date firmly establishes the statute of limitations has run, we may dismiss the complaint.

Mr. Mohn alleges facts which, with a most liberal construction, are governed by Pennsylvania's two-year statute of limitations for torts. His facts arise from alleged nondisclosures when he first started borrowing taxpayer dollars in 2010 to attend Penn State University.

His Complaint plainly confirms Mr. Mohn's claims are barred by Pennsylvania's statute of limitations. "Statutes of limitations are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'"[54] The law requires a plaintiff to file

claims "within a specified time period after the incident that gave rise to the claim occurred."[55] The statute of limitations generally "begins to run when the plaintiff's cause of action arises or accrues."[56] The cause of action accrues on the date of injury in a tort case.[57]

"[A] party has two years to sue for fraud."[58] The two-year limitations applies to negligent misrepresentation claims.[59] When the negligent misrepresentation stems from comments made about a contract, the latest possible date the statutes of limitations may begin to run is on the date the contract is issued to the borrower.[60] This two-year statute of limitations applies to "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct . . . including deceit or fraud."[61] Mr. Mohn's fraudulent concealment and fraudulent nondisclosure claims are also bound by the two-year statute of limitations.[62]

The statute of limitations may be tolled until the injury reasonably could have been discovered when the existence of an injury is not known and the knowledge could not be reasonably ascertained within the statute of limitations.[63] Mr. Mohn has the "burden of establishing [his] inability to learn of the injury despite exercising reasonable diligence."[64] Mistake, misunderstanding, or lack of knowledge do not toll the statute of limitations.[65]

Mr. Mohn borrowed taxpayer dollars in 2010. Mr. Mohn first learned of the poor job market, high cost of living, and apparent additional challenges presented by affirmative action upon graduating in 2014 after struggling to find an appropriate job. But he does not explain why he waited until 2022 to bring these claims. Mr. Mohn's claims are facially barred as long beyond the two-year statute of limitations for his fraud claims. It is his burden to show why the statute should be tolled, but he has made no attempt to do so. Even if Mr. Mohn had alleged enough facts

to support any of his claims, he would still be barred by the statute of limitations. We must dismiss his claims.

## III.    Conclusion

Justin Mohn sues Secretary Cardona and the Department of Education for hiding or concealing the practical risks associated with taking out a federal loan, claiming student borrowers like him should have been informed of the high cost of living, poor job market, and difficulties existing twelve years later presented by affirmative action policy which would make it hard to pay off the loan. We liberally construe Mr. Mohn as alleging: (1) negligent misrepresentation, (2) fraudulent concealment, (3) fraudulent nondisclosure, and (4) misapplying the Higher Education Act. The barebone allegations do not provide enough factual support to find he sufficiently pled any of these claims. Mr. Mohn also does not allege he warrants equitable tolling or some other exception which would allow him to overcome the two-year statute of limitations bar on claims admittedly arising when he signed the loan documents beginning in 2010. We dismiss the Complaint without prejudice to timely amend to show how he merits an exception to the statute of limitations and to plead facts in good faith allowing us to plausibly infer a claim consistent with Rule 11.

---

[1] ECF Doc. No. 2 at 5.

[2] *Id.*

[3] ECF Doc. No. 2 at 5. Mr. Mohn does not allege which loan he took, nor does he provide the loan documents with the disclosures. We do not know what federal loan Mr. Mohn is contesting.

[4] *Id.*

[5] *Id.* at 6.

[6] *Id.* at 7.

[7] *Id.*

[8] *Id.* at 6–7.

[9] *Id.* at 7.

[10] *Id.* at 8.

[11] *Id.*

[12] *Id.*

[13] 28 U.S.C. § 1915(e)(2)(B).

[14] *Elansari v. Univ. of Pa.*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

[15] *Id.* (quoting *Fleisher v. Standard Ins. Co*., 679 F.3d 116, 120 (3d Cir. 2012)).

[16] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)).

[17] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

[18] *Id.* (quoting *Mala*, 704 F.3d at 245).

[19] ECF Doc. No. 2 at 7.

[20] *Id.*

[21] *Advance Capital Partners, LLC v. Rossmann*, 495 F. App'x 235, 237 (3d Cir. 2012).

[22] *Id.* (quoting *Botrz v. Noon*, 729 A.2d 555, 561 (Pa. 1999)).

[23] *Tanksley v. Daniels*, 259 F. Supp. 3d 271, 303 (E.D. Pa. 2017) (quoting *Abdul-Rahman v. Chase Home Fin. Co.*, No. 13-5320, 2014 WL 3408564, at *5 (E.D. Pa. July 11, 2014)).

[24] ECF Doc. No. 2 at 7.

[25] *Cooper v. Sirota*, 37 F. App'x 46, 48 (3d Cir. 2002).

[26] ECF Doc. No. 2 at 5.

[27] *Id.*

[28] Mr. Mohn also cannot state a claim for deceptive conduct under Pennsylvania's Unfair Trade Practices and Consumer Protection Law for these same reasons. He does not plead justifiable reliance on deceptive conduct. 73 PA. CONS. STAT. §§ 201-4 & 201-9.2; *Gregg v. Ameriprise Financial, Inc.*, 245 A.3d 637, 644 (Pa. 2021) ("Section 201-9.2 creates a causation element, which requires a private plaintiff to demonstrate justifiable reliance ... Regardless of which unfair method of competition a plaintiff challenges in a private cause of action, therefore, Section 201-9.2 requires the plaintiff to establish justifiable reliance.").

[29] *Advance Capital Partners, LLC v. Rossmann*, 495 F. App'x 235, 238 n.1 (3d Cir. 2012) (citing *Lazin v. Pavilion Partners*, No. 95-601, 1995 WL 614018, at *7 (E.D. Pa. Oct. 11, 1995) ("Non-disclosure of a material fact would give rise to a cause of action for fraudulent non-disclosure, not for negligent misrepresentation.")).

[30] *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 782 (E.D. Pa. 2008) (quoting *Wilson v. Donegal Mut. Ins.*, 598 A.2d 1310, 1315–16 (Pa. Super. Ct. 1991)).

[31] *Marcum v. Columbia Gas Transmission, LLC.*, 423 F. Supp. 3d 115, 121 (E.D. Pa. 2019) (quoting *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 587 (W.D. Pa. 2004)).

[32] *Id.*

[33] *Marcum*, 423 F. Supp. 3d at 121 (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir. 1995)).

[34] *North Penn Towns, LP v. Concert Golf Partners, LLC*, No. 19-4540, 2021 WL 3562849, at *27 (E.D. Pa. Aug. 12, 2021) (internal quotation marks omitted) (quoting *Bucci*, 591 F. Supp. 2d at 783, *and Duquesne Light Co.*, 66 F.3d at 611 (3d Cir. 1995)).

[35] *Marcum*, 423 F. Supp. 3d at 121 (citing *eToll, Inc. v. Elias/Savion Adv. Inc.*, 811 A.2d 10, 23 (Pa. Super. Ct. 2002)).

[36] *Bucci*, 591 F. Supp. 2d at 783.

[37] *Marcum*, 423 F. Supp. 3d at 121 (citing *Yenchi v. Ameriprise Fin'l, Inc.*, 161 A.3d 811, 820 (Pa. 2017)).

[38] *North Penn Towns,* 2021 WL 3562849, at *25; *see also* Fed. R. Civ. P. 9(b).

[39] *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

[40] ECF Doc. No. 2 at 7.

[41] *Id.*

[42] *Id.*

[43] ECF Doc. No. 2 at 5.

[44] *Bionix Dev't Corp. v. Sklar Corp.*, No. 07-4465, 2008 WL 11365215, at *2 (E.D. Pa. Jan. 29, 2008).

[45] Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 611 (3d Cir. 1995)).

[46] ECF Doc. No. 2 at 7.

[47] Williams v. Nat'l School of Health Tech., Inc., 836 F. Supp. 273, 281 (E.D. Pa. 1993).

[48] *Morgan v. Markerdowne Corp.*, 976 F. Supp. 301 (D.N.J. 1997) (quoting *L'ggrke v. Benkula*, 966 F.2d 1346, 1348 (10th Cir. 1992)). *See also Thomas v. Nova Southeastern Univ., Inc.*, No. 11-2089, 2011 WL 3205298, at *3 (D.N.J. July 27, 2011).

[49] *Williams*, 836 F. Supp. at 278–281 (explaining why the Higher Education Act does not confer private action).

[50] *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal for failure to state a claim on the statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint.").

[51] *Peele v. McLaughlin*, 641 F. App'x 111, 112 (3d Cir. 2016) (*per curiam*).

[52] 641 F. App'x 111 (3d Cir. 2016) (*per curiam*).

[53] *Id.* at 112.

[54] *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 164 (3d Cir. 2016) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944)).

[55] *Mast v. Lafayette Coll.*, No. 13-4161, 2015 WL 409774, at *4 (E.D. Pa. Jan. 30, 2015).

[56] *Cooper v. Sirota*, 37 F. App'x 46, 48 (3d Cir. 2002) (citing *Leedom v. Spano*, 647 A.2d 221, 336 (Pa. Super. Ct. 1994)).

[57] *Id.* (citing *Stroback v. Camaioni*, 674 A.2d 257, 262 (Pa. Super. Ct. 1996)).

[58] *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 218 (3d Cir. 2022).

[59] *Cooper*, 37 F. App'x at 48 (citing 42 Pa. Cons. Stat. Ann. § 5524(7)).

[60] *See id.* (finding the latest possible date the plaintiff's negligent misrepresentation claim's two-year statute of limitations could start would be the date defendant issued her the policies).

---

[61] 42 Pa. Cons. Stat. Ann. § 5524(7).

[62] To the extent Mr. Mohn tried to state a claim for deceptive conduct claim under Pennsylvania's Consumer Protection Law, it carries a six-year statute of limitations. *Brock v. Thomas*, 782 F. Supp. 2d 133 (E.D. Pa. 2011). This claim is also barred by the statute of limitations for the same reasons.

[63] *Cooper*, 37 F. App'x at 48.

[64] *Id.*

[65] *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citing *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 475 (Pa. 1964)).